U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED
2017 DEC 20 PM 2:30
CLERK
BY ___ pp ___
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

STEPHEN WHITAKER and DAVID GRAM,

Plaintiffs,

v.

Case No. 5:17-cv-192

DEPARTMENT OF COMMERCE,

Defendant.

## DECISION ON PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT & DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM AND MOTION FOR SUMMARY JUDGMENT
**(Docs. 10 & 15)**

This matter came before the court on December 15, 2017 for hearing on pending cross-motions for summary judgment and the Defendant's motion to dismiss. Attorney Kel McClanahan of National Security Counselors appeared for the Plaintiffs, and Attorney Marcia Sowles of the United States Department of Justice and Assistant United States Attorney Nikolas Kerest appeared for the Defendant. For the reasons set forth herein, the court denies the Plaintiff's motion for partial summary judgment as to Counts 16 and 17 of the complaint, grants the Defendant's motion to dismiss as to Counts 1–5 and 16, grants the Defendant's motion for summary judgment as to Counts 6–15 and 17, and reserves decision on summary judgment as to Count 18 pending supplemental briefing from the parties.

### BACKGROUND

This lawsuit arises out of requests for documents pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. Plaintiff Stephen Whitaker is a citizen of Vermont, and Plaintiff David Gram is a reporter for VTDigger. The Plaintiffs, through counsel, submitted FOIA

1

requests to the First Responder Network Authority ("FirstNet"), the National Telecommunications and Information Administration ("NTIA"), and the Department of Commerce ("DOC").

The FOIA requests at issue concerned the operations of FirstNet, which is an independent authority within the NTIA, which is itself an agency of the Department of Commerce ("DOC"). FirstNet was created by Congress in 2012 at the recommendation of the 9/11 Commission to oversee the development of a national wireless broadband network for emergency first responders. FirstNet issued requests for proposals to build and operate the national network, and on March 30, 2017, the bid was awarded to AT&T. FirstNet and AT&T then created an online system called the State Plans Portal ("the Portal") in order to meet FirstNet's statutory obligation to provide state governments with information about the proposal so each state can decide, with this information in hand, whether to opt into the national network or construct its own alternative radio access network. *See generally* 47 U.S.C. § 1442(e). On June 19, 2017, FirstNet released plans for the national network through the Portal, and gave the state governments 45 days to review the plan and provide feedback. On September 29, 2017, the 90-day opt-in timeline began. State governments are required to decide to opt in or out by December 28, 2017. States that opt out will receive federal funding to assist in building their alternative radio access networks.

The present litigation concerns six FOIA requests submitted by the Plaintiffs between September 1 and October 5, 2017. The first three requests were submitted to FirstNet, the NTIA, and the DOC on September 1, 2017. They sought user comments submitted to the Portal, communications the agencies considered to be agreements to opt into the national network, and contracts, agreements, memoranda of understanding with AT&T. The fourth and fifth requests were submitted to FirstNet, the NTIA, and the DOC on September 25, 2017. They sought copies

of the plans provided to the states and associated correspondence and records about the terms of use of the Portal. The sixth request was submitted to FirstNet and the NTIA, but not the DOC, on October 5, 2017. It sought correspondence from states affirmatively opting out of the national network.

FirstNet responded to each request with a letter stating its position that it is exempt from the requirements of FOIA by operation of a provision of its enabling statute, 47 U.S.C. § 1426(d), and thus had not conducted any search for responsive documents. The NTIA responded to the September 25 request for records regarding the terms of use of the Portal by providing five unredacted documents. The NTIA's responses to all of the other requests were letters stating that, because any responsive records would be FirstNet records, the requests would be transferred to FirstNet. The DOC responded to each request with a letter stating that any responsive records would be FirstNet records, and that the request would be transferred to FirstNet.

Additionally, on September 1, 2017, the Plaintiffs, through counsel, submitted a FOIA request to the DOC for all privacy impact assessments created for systems affiliated with FirstNet. The DOC initially responded in the same way it responded to all other requests, but in further correspondence with the Plaintiffs' counsel, it directed the Plaintiffs' counsel to a privacy impact assessment for "the NTIA-035 FirstNet General Support System" available on the DOC's public website.

On October 6, 2017, the Plaintiffs commenced the present litigation, and the operative complaint alleges eighteen causes of actions. Counts 1–5 allege improper denials of records in violation of FOIA by FirstNet in its responses to the Plaintiffs' requests. Counts 6–10 allege improper records denials by the NTIA. Counts 11–15 allege improper records denials by the

3

DOC. Count 16 alleges that FirstNet's interpretation of a provision of its enabling statute, 47 U.S.C. § 1426(d), as exempting it from FOIA constitutes a policy or practice in violation of FOIA, and seeks declaratory and injunctive relief. Count 17 alleges that the NTIA and DOC have a policy or practice of referring to FirstNet all document requests related to FirstNet, and alleges that this practice is a FOIA violation. The Plaintiffs seek declaratory and injunctive relief. Count 18 alleges that the DOC failed to complete an appropriate privacy impact assessment, as required by the E-Government Act of 2002, 44 U.S.C. § 3501 note, on the effect of FirstNet on the privacy of personal information gathered via FirstNet. Count 18 requests an injunction forbidding FirstNet from collecting personal information until a proper privacy impact assessment is complete.

In light of the December 28, 2017 FirstNet opt-in deadline and the Plaintiffs' representations that the requests at issue were made in order to obtain documents to be used in the political process to influence the opt-in decisions of the states, this court granted expedited consideration of this matter. On December 15, 2017, the court heard argument on the dispositive motions.

## DISCUSSION

### I. Counts 1–5 and 16

The disposition of Counts 1–5 and 16 on the Defendant's motion to dismiss rests on an issue of statutory interpretation. Section 1426(d) of Title 47 provides:

> (d) Exemption from certain laws. Any action taken or decisions made by the First Responder Network Authority shall be exempt from the requirements of—
> (1) section 3506 of title 44 (commonly referred to as the Paperwork Reduction Act);
> (2) chapter 5 of title 5 (commonly referred to as the Administrative Procedures Act); and
> (3) chapter 6 of title 5 (commonly referred to as the Regulatory Flexibility Act).

4

The question in dispute is whether the language "chapter 5 of title 5, United States Code (commonly referred to as the Administrative Procedures Act)" in 47 U.S.C. § 1426(d)(2) encompasses FOIA, which is codified at 5 U.S.C. § 552, within chapter 5 of title 5.

This case appears to be only the second time any court has seen this question, and the first time any court has considered it directly. The only other case interpreting 47 U.S.C. § 1426(d)(2) cited by the parties or found by the court is *United States v. Story Cty., Iowa*, 28 F. Supp. 3d 861, 866 n.5 (S.D. Iowa 2014). The court held that FOIA falls within the 47 U.S.C. § 1426(d)(2) exception, but it did not rely on this point in the substance of its decision on the merits.

The Plaintiffs argue that the statute can and should be construed such that the parenthetical "(commonly referred to as the Administrative Procedures Act)" limits the reach of the language "chapter 5 of title 5" to those provisions of chapter 5 of title 5 that are commonly known as the Administrative Procedure Act ("APA"). Because FOIA is not commonly known as a part of the APA, the Plaintiffs reason, FOIA is not among the provisions of chapter 5 of title 5 from which 47 U.S.C. § 1426(d)(2) exempts FirstNet. The Defendant urges the court to read the parenthetical as a reminder that chapter 5 of title 5 is the APA. It argues that FOIA, which is undisputedly located within chapter 5 of title 5, falls within the scope of the exemption.

In support of their position, the Plaintiffs highlight the substantive differences between FOIA and the rulemaking and adjudication provisions of the rest of the APA. These differences are plain, but the court is not persuaded that they render FOIA so separate and distinct from the APA that it should be treated as something other than a part of the APA.

The court is satisfied that FOIA falls within "chapter 5 of title 5 (commonly referred to as the Administrative Procedures Act)" and that FirstNet is accordingly exempt from FOIA.

5

"[S]tatutory interpretation must begin with the plain language, giving all undefined terms their ordinary meaning while attempting to ascertain how a reasonable reader would understand the statutory text, considered as a whole." *Deutsche Bank Nat'l Trust Co. v. Quicken Loans Inc.*, 810 F.3d 861, 868 (2d Cir. 2015) (alterations and internal quotation marks omitted). Here, the words of the statute are unambiguous. The location of FOIA within Title 5, Chapter 5 of the United States Code is undisputed. It is true, of course, that most lawyers and judges associate the APA with rulemaking and judicial review of agency action. FOIA is not the first subject which comes to mind when someone refers to the APA. But the common usage of the term "APA" to refer to the more familiar elements of the statute does not alter the fact that FOIA is codified in company with the more familiar provisions of the APA within Title 5, Chapter 5. In the face of an unambiguous statute which exempts FirstNet from the APA, the court must follow the legislative directive. FirstNet is not subject to FOIA requests.

The analysis could end there. "In the usual case, if the words of a statute are unambiguous, judicial inquiry should end, and the law is interpreted according to the plain meaning of its words." *Devine v. United States*, 202 F.3d 547, 551 (2d Cir. 2000) (citing *Rubin v. United States*, 449 U.S. 424, 430 (1981)). But the court also notes that, to the extent that there is any ambiguity in the statutory language, the Defendant has shown that the ambiguity should be resolved in its favor. The Defendant has provided a thorough recitation of the history of the APA and FOIA demonstrating that the location of FOIA within Chapter 5 is not accidental. FOIA has long been a part of the APA. Even prior to the enactment of FOIA, the APA contained provisions regarding public access to information. *See* Pub. L. 79-404, § 3; 60 Stat. 238 (1946). The Defendant notes that FOIA was enacted expressly "[t]o amend section 3 of the Administrative Procedure Act . . . to clarify and protect the right of the public to information[.]"

Pub. L. 89-487, 80 Stat. 250 (1966). This language provides a clear expression of the legislature's expectation that FOIA would form part of the APA. The Defendant also draws the court's attention to the 1967 recodification of FOIA as 5 U.S.C. § 552, bringing it explicitly within chapter 5 of title 5 alongside other provisions of the APA. The legislative history is thus in accord with the plain meaning of the statutory text. The Defendant also points to precedent in which the Supreme Court has unambiguously declared that "[t]he statute known as the FOIA is actually part of the [APA]." *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 754 (1989).

The Plaintiffs point to the Open FOIA Act of 2009, which is codified at 5 U.S.C. § 552(b)(3). It provides as follows:

> (b) This section does not apply to matters that are...
>
> (3) specifically exempted from disclosure by statute (other than section 552b of this title), if that statute—
>
> (A)
>
> (i) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or
>
> (ii) establishes particular criteria for withholding or refers to particular types of matters to be withheld; and
>
> (B) if enacted after the date of enactment of the OPEN FOIA Act of 2009, specifically cites to this paragraph.

The Open FOIA Act of 2009 added the requirement in subsection (b)(3)(B); the requirements of subsection (b)(3)(A) had existed prior.

The Plaintiffs argue that subsection (b)(3)(B) means that no statutory FOIA exemption enacted after the Open FOIA Act of 2009 is valid unless it specifically cites subsection (b)(3)(B). Put another way, the Plaintiff asks the court to read "if" as "only if." The court will not do so, as such a reading would strain the statutory language beyond reason.

7

Subsection (b)(3) applies, by its own terms, to "matters that are . . . specifically exempted from disclosure by statute." The court does not read it to apply to the exemption of FirstNet in 47 U.S.C. § 1426(d)(2), which is not a specific exemption of matters from disclosure, but rather a general exemption of an entire administrative agency from all of the obligations of FOIA. A government entity utterly excused from FOIA obligations by statute need not comply with subsections of FOIA that define subclasses of specific information that can be shielded from disclosure. FirstNet's total exemption from FOIA would not have related to or relied upon subsection (b)(3) prior to the passage of the Open FOIA Act of 2009, and it does not do so now. Rather, it rests on statutory authority located outside the APA which removes FirstNet entirely from the requirements of FOIA.

The more sensible reading of subsection (b)(3) is that, like the eight other exceptions in subsection (b) codified alongside it, it governs the exemption of specific categories of information based on the nature of that information. The court is satisfied that the broad exemption from all APA provisions set forth in 47 U.S.C. § 1426(d)(2) is not subject to the requirement of subsection (b)(3)(B) and is not invalid for failure to cite subsection (b)(3)(B).

Throughout their papers, the Plaintiffs rely on the policy concerns that motivated the enactment of FOIA and that underlie FOIA and related law. Government accountability and transparency, facilitated by public access to government records, are indeed essential to the health of a free democratic republic. However, legitimate policy concerns also motivated the establishment of FirstNet and the congressional decision to exempt it from the burdens and requirements imposed by the APA. FirstNet is an instrumentality of emergency response in the face of threats to national security. Congress was well within its rights to relieve FirstNet of the obligations imposed by the APA on other agencies.

The court concludes that FirstNet is exempt from FOIA pursuant to 47 U.S.C. § 1426(d)(2). Accordingly, Counts 1–5 and 16 of the complaint fail as a matter of law and will be dismissed.

## II. Counts 6–15

The Defendant has moved for summary judgment on Counts 6–15 and has provided sworn declarations from the NTIA and DOC agency officials who were responsible for responding to the requests at issue. These declarations state in essence that the officials determined that the agency was not reasonably likely to have responsive records and did not conduct a search for records.

The heart of the inquiry on summary judgment is whether these declarations are sufficient to forestall any genuine dispute of material fact as to the agencies' compliance with FOIA. "On a motion for summary judgment, the court must 'resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought.'" *Reyes v. Lincoln Auto. Fin. Servs.*, 861 F.3d 51, 54 (2d Cir. 2017) (quoting *Burg v. Gosselin*, 591 F.3d 95, 97 (2d Cir. 2010)). However, on summary judgment in FOIA litigation, sworn affidavits from agency officials regarding their handling of FOIA requests are entitled to a presumption of good faith. *See Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 489 (2d Cir. 1999). Here, the Plaintiffs have submitted no evidence contradicting or casting any doubt on the facts set forth in the agency declarations submitted by the defense, nor have they provided any evidence from which could be drawn any permissible inference creating any dispute as to the facts set forth in the agency declarations. The Plaintiffs protest that the declarations are deficient in several respects, principally with respect to the basis of the agency officials' conclusion that the agencies were not likely to possess responsive records. But none of the Plaintiffs' objections

are sufficient to overcome the presumption of good faith to which the officials are entitled or to raise any genuine factual dispute. The court finds no genuine dispute as to truth of any of the statements made in the agency declarations, or as to any other material fact in this matter.

There remains the question of whether, on this record, the Defendant is entitled to judgment as a matter of law. The Plaintiffs maintain that the facts set forth in the agency declarations are sufficient to support a claim of improper records denials in violation of FOIA. They argue that FOIA does not permit an agency to decline to perform a search for responsive documents in the circumstances of this case.

There does not appear to be controlling Second Circuit authority on the precise circumstances under which FOIA permits an agency to decline to perform a search. The Defendants cite a number of cases from the District of the District of Columbia and one from the Southern District of New York in which courts have ruled that an agency's refusal to perform a search was permissible under FOIA where it was clear from the face of the request in light of the agency's functions that the agency would not have any responsive records. *See MacLeod v. U.S. Dep't of Homeland Sec.*, No. 15-cv-1792, 2017 WL 4220398 at *11 (D.D.C. Sept. 21, 2017) ("[w]here the Government's declarations establish that a search would be futile, the reasonable search required by FOIA may be no search at all") (quoting *Reyes v. U.S. Envtl. Prot. Agency*, 991 F. Supp. 2d 20, 27 (D.D.C. 2014)); *Jenkins v. U.S. Dep't of Justice*, No. 16-1676, 2017 WL 2982946 at *3 (D.D.C. July 12, 2017) (where an agency demonstrates it is unlikely to possess responsive records, it is not required to conduct a search); *Earle v. U.S. Dep't of Justice*, 217 F. Supp. 3d 117, 123–24 (D.D.C. 2016) (granting summary judgment to agency where declarant explained that the agency did not maintain the records sought); *Cunningham v. U.S. Dep't of Justice*, 40 F. Supp. 3d 71, 85–86 (D.D.C. 2014) (granting summary judgment where

Office for Victims of Crime demonstrated that a search would be futile because it does not maintain such records); *Espino v. U.S. Dep't of Justice*, 869 F. Supp. 2d 25, 28 (D.D.C. 2012); *Am-Arab Anti-Discrimination Comm. v. U.S. Dep't of Homeland Sec.*, 516 F. Supp. 2d 83, 88 (D.D.C. 2007) (FOIA does not require a search for records an agency does not maintain); *Amnesty Int'l USA v. C.I.A.*, No. 07 Civ. 5435, 2008 WL 2519908 at *11 (S.D.N.Y. June 19, 2008) (no search required where declarations of agency officers state that based on their knowledge of their offices they were not reasonably likely to have responsive records).

The Plaintiffs attempt to distinguish these decisions and confine them to their facts, asserting that the districts courts have excused agencies from conducting searches only when (1) records do not exist because the subject of the request does not exist, (2) extensive consultation with multiple knowledgeable agency officials yields the conclusion that no records exist, or (3) the subject matter of the request is clearly beyond the purview of the agency. The court is not persuaded that the decisions should be read so narrowly. The unifying principle that emerges from these decisions is that when an agency reasonably determines, based on the nature of the request and the scope of the agency's operations, that it is unlikely to have responsive records and that a search is likely to be futile, it need not proceed with a search.

The NTIA and the DOC, are umbrella agencies over FirstNet, which is an independent authority within the NTIA. The NTIA and DOC reasonably determined, based on the scope of their operations, that they were unlikely to have any records responsive to the requests which focused on FirstNet. The court finds no genuine dispute as to the sufficiency of the agency declarations to establish the futility of searches for records responsive to the Plaintiffs' requests. The court is satisfied that the Defendant is entitled to judgment as a matter of law, and will grant the Defendant's motion for summary judgment on Counts 6–15.

## III. Count 17

With respect to the alleged policy or practice at the NTIA and the DOC of referring FOIA requests to FirstNet, the agency declarations, the veracity of which are not genuinely disputed on summary judgment, establish that the response to these requests was the result of individual evaluations of each request by an agency official, who made a determination about whether the agency was likely to have responsive records. Further, the agency declarations establish that the referral of each request to FirstNet after the determination that any responsive records would be FirstNet records was not done in lieu of the recipient agency considering the request, but rather in addition to it. The declarations state that document requests regarding FirstNet were not simply referred to FirstNet without any other action as a matter of policy, but rather were referred to FirstNet after the receiving agency had determined that there were not likely to be any responsive documents. *See* Declaration of Kathy Smith, ¶¶ 8–9, 13, 19–20; Declaration of Michael J. Toland, ¶¶ 9, 13, 18–22. The declarations further state that the referral of the requests to FirstNet was not part of a conspiracy to shunt all FOIA requests to a FOIA-immune agency, but rather was done in order to give FirstNet notice of the request and an opportunity to exercise its discretion to release documents that would have been responsive to the request if it deemed it appropriate to do so.

The declarations establish beyond genuine dispute that there was no practice or policy in violation of FOIA, and that the Defendant is entitled to judgment as a matter of law. The court will grant the Defendant's motion for summary judgment on Count 17.

## IV. Count 18

Count 18 requests injunctive relief prohibiting FirstNet from collecting personally identifiable information until proper privacy impact assessments are complete. The Defendant moved to dismiss Count 18 for lack of jurisdiction and failure to state a claim.

With respect to jurisdiction, the Defendant argues that because no FirstNet system yet exists except for the Portal, the Plaintiffs' claims about the privacy of any personal information that might be collected by future FirstNet systems when they do come into existence are not yet ripe for judicial review. This is correct; to the extent that Count 18 seeks relief for the lack of privacy impact assessments for systems not yet in existence, such a claim is not ripe for judicial review.

However, the parties do not dispute that the Portal currently exists and is used by state government officials to access and comment on FirstNet plans. To the extent that Count 18 concerns the Portal, it is ripe for review now.

The declaration of Brian Hobson submitted by the Defendant contains factual information about the Portal and the collection of personal information related to the operation of the Portal. The Hobson declaration establishes that basic Portal user information, comprising state government official users' names, titles, employing agencies, email addresses, and cell phone numbers, was collected by FirstNet via email in the form of Excel spreadsheets compiled by state government officials. This information was then forwarded to AT&T, which provided login credentials to the users. *See* Hobson Dec. at ¶¶ 6–8. Because the Hobson declaration is pertinent to the final disposition of Count 18, the court will convert the motion to dismiss into a motion for summary judgment pursuant to Fed. R. Civ. P. 12(d).

However, because of the compressed briefing schedule of this matter as a result of expedited consideration, the parties have not had a reasonable opportunity to present all material pertinent to the motion, as is their right under Rule 12(d). Count 18 does not share the time sensitivity of the FOIA counts. The Plaintiffs' initial motion for partial summary judgment did not seek a ruling on it, and the privacy impact assessment requirement is less pertinent to the political objectives underlying the request for expedited consideration of the FOIA requests. Accordingly, the court will reserve decision on Count 18 and request further briefing from the parties. The parties are directed to file supplemental memoranda and/or declarations regarding Count 18. The Defendant is specifically asked to address in detail and with clarity: (1) whether FirstNet's collection of Portal user information in the form of Excel spreadsheets via email, as detailed in the Hobson declaration, was a collection of information subject to privacy impact assessment requirements of the E-Government Act, (2) whether and how the Defendant has complied with those requirements, and (3) what remedy would be appropriate if the Defendant had not complied. The parties' filings are not limited to these issues, and the parties may file all materials they deem pertinent.

The Defendant's supplemental memorandum shall be filed no later than January 19, 2018. The Plaintiffs' supplemental memorandum, which should address any materials and arguments advanced in the Defendant's supplemental memorandum, shall be filed no later than February 3, 2018.

## CONCLUSION

The Plaintiffs' Motion for Partial Summary Judgment (Doc. 10) is **DENIED**. The Defendant's Motion to Dismiss for Failure to State a Claim and Motion for Summary Judgment (Doc. 15) is **GRANTED** in part. Counts 1–5 and 16 of the complaint are **DISMISSED** for failure to state a claim. Summary judgment is granted in favor of the Defendant on Counts 6–15 and 17 and those counts are **DISMISSED**. The court reserves decision on Count 18 pending the parties' submission of supplemental materials as set forth herein.

Dated at Rutland, in the District of Vermont, this 20 day of December, 2017.

Geoffrey W. Crawford, Judge
United States District Court