


UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

STEPHEN WHITAKER and DAVID GRAM, and all other similarly situated individuals,

    Plaintiffs,

v.

DEPARTMENT OF COMMERCE,

    Defendant.

Case No. 5:17-cv-192

# DECISION ON SUMMARY JUDGMENT ON COUNT 18 AND MOTION TO STRIKE
## (Docs. 15, 49)

In its December 20, 2017 decision, the court reserved decision on summary judgment as to Count 18 of the complaint in this matter and requested the parties to submit supplemental briefing. (Doc. 32.) The parties have done so, and the court has reviewed the supplemental briefs. For the reasons set forth herein, the court denies the Plaintiffs' motion to strike the declaration of Paul Madison from the summary judgment record (Doc. 49) and grants summary judgment in favor of the Defendant, the Department of Commerce ("DOC"), on Count 18 (Doc. 15).

## BACKGROUND

Much of the relevant factual background is set forth in the court's December 20, 2017 decision. In short, the Plaintiffs allege that the DOC and the First Responders Network Authority ("FirstNet Authority"), a government instrumentality within the DOC, have failed to comply with section 208 of the E-Government Act of 2002, Pub. L. No. 107-347, § 208(b), 116 Stat. 2899, 2921–22 (Dec. 17, 2002), codified at 44 U.S.C. § 3501 note ("Section 208"), in the course of the planning and implementation of the Nationwide Public Safety Broadband Network

("NPSBN"). In particular, the Plaintiffs claim in Count 18 that the DOC was required under Section 208 to issue privacy impact assessments for the NPSBN itself and for the States Plan Portal, a website through which the FirstNet Authority disseminates information about the NPSBN to state government officials. The Plaintiffs seek injunctive relief prohibiting the DOC and the FirstNet Authority from collecting personally identifiable information until proper privacy impact assessments are complete.

The parties agree that the only privacy impact assessment that has been issued that is potentially relevant to the NPSBN or the Portal is the assessment for "the NTIA-035 FirstNet General Support System" available on the DOC's public website.

The DOC moved to dismiss Count 18 for lack of jurisdiction and failure to state a claim. The court's December 20, 2017 decision reserved judgment as to Count 18 and solicited supplemental memoranda and/or declarations regarding Count 18, and in particular asked the DOC to address: (1) whether FirstNet's collection of Portal user information in the form of Excel spreadsheets via email, as detailed in the Hobson declaration, was a collection of information subject to privacy impact assessment requirements of the E-Government Act, (2) whether and how the Defendant has complied with those requirements, and (3) what remedy would be appropriate if the Defendant had not complied.

The court's April 26, 2018 decision denied the Plaintiffs' request to certify the matter for interlocutory appeal and granted the DOC's request to submit another round of additional briefing.

The parties have raised additional factual matters in their supplemental briefing. The Plaintiffs claim, based on information published by various media outlets in news stories regarding the operational status of "FirstNet," that the NPSBN is operational. The DOC has

submitted an additional declaration from Paul Madison, Chief Counsel for the FirstNet Authority, stating that the NPSBN is not yet operational. The DOC asserts that the news reporting relied on by the Plaintiffs refers not to NPSBN but rather to other services provided by AT&T and marketed under the "FirstNet" brand.

The Plaintiffs have moved to strike the Madison Declaration as inadmissible under Federal Rule of Evidence 1002.

## DISCUSSION

### I. Motion to Strike

The court turns first to the Plaintiffs' motion to strike (Doc. 49). The Plaintiffs assert that the declaration is inadmissible secondary evidence of a contract between the FirstNet Authority and AT&T and should be excluded under Fed. R. Evid. 1002. The DOC responds that the declaration is not offered to prove the contents of a written document and Rule 1002 is inapplicable.

Rule 1002 of the Federal Rules of Evidence, the best evidence rule, provides that "[a]n original writing, recording, or photograph is required in order to prove its content[.]" By its terms, Rule 1002 is narrow in scope, and is implicated only when evidence is offered to prove the contents of a physical written document.

The Plaintiffs ignore the important distinction between, on one hand, the substantive terms of a contract as a legal agreement, and on the other hand, the contents of a physical written document memorializing that agreement. Here, the content of the writing is not at issue. Madison's testimony is not being offered to admit the text of the contract or any other document. Rather, Madison asserts the existence of a licensing agreement permitting AT&T to market non-NPSBN services under the "FirstNet" brand. The proof required here is of the fact of the license,

3

not of the contents of a writing. *See United States v. Sliker*, 751 F.2d 477, 483 (2d Cir. 1984) (upholding a district court's ruling that best evidence rule was inapplicable to testimony regarding the FDIC insurance status of a bank because the matter at issue was the fact of insurance rather than the contents of a writing).

Accordingly, Rule 1002 does not bar Madison's declaration. The Plaintiffs' motion to strike is denied.

## II. Ripeness and Scope of Count 18

In its December 20, 2017 decision, the court determined that the NPSBN was not yet operational and thus any claim alleging deficient privacy impact assessments was unripe. The parties have subsequently addressed the question of whether the NPSBN is operational. The court has examined the Madison declaration submitted by the DOC, and the court concludes that the Madison declaration establishes beyond genuine dispute that the NPSBN remains nonoperational. To the extent that the Section 208 claim relates to the NPSBN, it remains unripe for review. The scope of the existing Section 208 claim remains limited to the States Plan Portal.

## III. Standing

The DOC argues that the Plaintiffs lack standing to mount a Section 208 challenge. The Plaintiffs premise their Section 208 claim on an "informational injury" theory of standing. They argue that Section 208(b)(1)(B), which provides that "each agency shall . . . make the privacy impact assessment publicly available," establishes a public informational right enforceable by suit. Denial of access to that information, the Plaintiffs claim, is an informational injury sufficient to satisfy the requirement of injury-in-fact embedded in the Article III case or controversy requirement.

It is well-established that informational injury can, in certain circumstances, confer standing. *See, e.g., Fed. Election Comm'n v. Akins*, 524 U.S. 11, 20-25 (1998); *Pub. Citizen v. U.S. Dep't of Justice*, 491 U.S. 440, 449 (1989). The most recent Supreme Court decision regarding the doctrine of informational injury is *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016), where the Court noted the important distinction between a concrete harm sufficient to confer standing and a "bare procedural violation." While acknowledging that "the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact," the Supreme Court held that a plaintiff cannot "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Id.* (citing *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009)).

To the extent that Section 208(b)(1)(B) establishes any right enjoyed by the public at large, that right is a procedural right of the sort addressed in *Spokeo*. The government's alleged failure to make privacy impact assessments publicly available is a failure to abide by a statutorily prescribed procedure, as opposed to an erroneous adjudication or an improper exercise of enforcement authority. The question is thus whether this procedural violation is sufficiently closely connected to a concrete harm to constitute injury-in-fact within the meaning of *Spokeo*.

The first case from the Second Circuit applying *Spokeo* was *Strubel v. Comenity Bank*, 842 F.3d 181, 188–90 (2d Cir. 2016). There, the Second Circuit held:

> [A]n alleged procedural violation can by itself manifest concrete injury where Congress conferred the procedural right to protect a plaintiff's concrete interests and where the procedural violation presents a risk of real harm to that concrete interest. But even where Congress has accorded procedural rights to protect a concrete interest, a plaintiff may fail to demonstrate concrete injury where violation of the procedure at issue presents no material risk of harm to that underlying interest.

*Id.* at 190. In the subsequent case of *Crupar-Weinmann v. Paris Baguette America, Inc.*, 861 F.3d 76, 81 (2d Cir. 2017), the Second Circuit, following *Strubel*, clarified that the key inquiry is

5

whether the procedural violation, on its own, "presents a material risk of harm to the interest Congress sought to protect." *See also Katz v. Donna Karan Co., L.L.C.*, 872 F.3d 114, 119 (2d Cir. 2017) (following *Strubel* and *Paris Baguette*).

The parties cite a number of authorities from the D.C. Circuit that provide an analytical framework for addressing this question. While the D.C. Circuit's precedents are not binding on this court, this court recognizes the D.C. Circuit's extensive experience and familiarity with these types of cases that sit at the intersection of constitutional and administrative law, and finds its decisions in this area highly persuasive. The D.C. Circuit has required a plaintiff proceeding on an informational injury theory of standing to establish that "(1) it has been deprived of information that, on its interpretation, a statute requires the government or a third party to disclose to it, and (2) it suffers, by being denied access to that information, the type of harm Congress sought to prevent by requiring disclosure." *Friends of Animals v. Jewell*, 828 F.3d 989, 992 (D.C. Cir. 2016) (citing *Akins*, 524 U.S. at 21–22).

It thus appears that the Second Circuit and the D.C. Circuit are in accord. In determining whether an informational deprivation is sufficiently connected to a concrete harm to confer standing, both *Strubel* and *Friends of Animals* look to the purpose of the statute requiring the informational disclosure—in particular, the underlying interest the statute seeks to protect or the underlying harm it seeks to prevent by requiring disclosure. They both ask whether the informational deprivation jeopardizes that precise interest or causes that precise harm. If so, and only if so, the informational deprivation is injury-in-fact and can confer standing. The Second Circuit's focus on the "underlying interest," *Strubel*, 842 F.3d at 190, and the D.C. Circuit's focus on the "type of harm," *Friends of Animals*, 828 F.3d at 992, are just two phrasings of the same inquiry.

The question thus becomes what underlying interest Congress sought to protect or what type of harm Congress sought to prevent by enacting Section 208. The explicit purpose set forth in the text of Section 208(a) is "to ensure sufficient protections for the privacy of personal information as agencies implement citizen-centered electronic Government." The underlying interest is the interest of individuals in the privacy of their personal information; the contemplated harm is the unwarranted disclosure of personal information.

The informational deprivation suffered by the Plaintiffs is a lack of access to privacy impact assessments. The Plaintiffs do not allege that their own personal privacy is in jeopardy or that their personal information is at risk of unwarranted disclosure; they allege only that they should be able to access privacy impact assessments that they cannot access. The nature of the harm the Plaintiffs claim to have suffered and the nature of the harm Congress identified in its express statement of the purpose of the statute are totally different. Based on this, the DOC argues that the Plaintiffs' informational injury cannot amount to injury-in-fact.

The Plaintiffs urge the court to read into Section 208 an additional legislative purpose of ensuring not only that the government would protect personal privacy, but also that the public could observe the steps taken by the government to protect personal privacy. This more expansive understanding of the legislative purpose finds some support in § 2(b) of the E-Government Act, 116 Stat. at 2900–01, which sets forth the purposes of the Act as a whole. Section 2(b)(9) states that a purpose of the Act as a whole is "[t]o make the Federal Government more transparent and accountable." 116 Stat. at 2901. A court could read the statute to extend the general purposes set forth in § 2(b) to all provisions of the Act, even those with their own narrower purposes specified in other statutory text. The more reasonable reading, though, is that the specific purpose set forth in Section 208 is definitive. The purpose of improving transparency

and accountability set forth in § 2(b)(9) does undoubtedly animate other provisions of the Act, including, for example, § 207(a), which addresses the organization, preservation, and accessibility of government documents on the Internet. *See* 116 Stat. at 2916. But it would be an overreading of § 2(b)(9) to superimpose it upon Section 208's own explicit statement of its purpose.

The D.C. Circuit has read the purpose of Section 208 narrowly, holding that "an inability to ensure public oversight of record systems" was not the kind of harm Congress had in mind when it enacted Section 208. *Elec. Privacy Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*, 878 F.3d 371, 378 (D.C. Cir. 2017) ("*EPIC*"). In doing so, it overruled the D.C. District Court case that the Plaintiffs cite, where the district court cited § 2(b)(9) and found that informational standing was appropriate. *See Elec. Privacy Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*, 266 F. Supp. 3d 297, 309 (D.D.C. 2017).

Again, the decisions of the D.C. Circuit are not binding upon this court, but this court finds the *EPIC* decision well-reasoned and highly persuasive, especially in the absence of controlling Second Circuit precedent, or indeed any other precedent addressing Section 208.

The Plaintiffs attempt to distinguish *EPIC* by arguing that its result was premised on the plaintiff's status as an organization rather than an individual voter. This attempt is unsuccessful. In *EPIC*, the D.C. Circuit wrote:

> Section 208, a "Privacy Provision[]" by its very name, declares an express "purpose" of "ensur[ing] sufficient protections for the privacy of personal information as agencies implement citizen-centered electronic Government." E-Government Act § 208(a). As we read it, the provision is intended to protect individuals—in the present context, voters—by requiring an agency to fully consider their privacy before collecting their personal information. EPIC is not a voter and is therefore not the type of plaintiff the Congress had in mind. Nor is EPIC's asserted harm—an inability to "ensure public oversight of record systems," Appellant's Reply Br. 9—the kind the Congress had in mind. Instead, section 208 is directed at individual privacy, which is not at stake for EPIC.

*EPIC*, 878 F.3d at 378. The D.C. Circuit considered both EPIC's status as an organization and its failure to show any privacy violation, but, contrary to the Plaintiffs' contentions, it is clear that each of these was an independently sufficient ground for finding that the plaintiff had not suffered the type of harm Congress sought to prevent by enacting Section 208. A natural person in EPIC's position would have fared no better before the D.C. Circuit.

The court takes care here not to conflate the statute's mechanism of action with the underlying interest it seeks to protect. Section 208 was enacted to protect the privacy of individual personal information via the mechanism of public scrutiny of the government's privacy practices, but that does not mean that facilitating public scrutiny was the ultimate purpose of the statute. Within the structure of the statutory scheme established by Section 208, public scrutiny is merely an instrumental value. Protection of personally identifiable information of citizens is the terminal value.

This is by no means a clear or easy question, and the court appreciates the Plaintiffs' position. Openness and transparency in government operations and vigorous public oversight of the administrative state are crucial to the functioning of a healthy democracy. But the question before the court is not whether, in the abstract, such a policy of openness and transparency would be beneficial; it is whether Section 208 in particular was enacted with the purpose of furthering such a policy. Having carefully examined the text and structure of the statute, the court is not convinced that Section 208 was enacted with this broad purpose. Section 208 was enacted with the narrower purpose of protecting private personal information.

The deprivation of information the Plaintiffs allege is thus not the "type of harm that Congress sought to prevent by requiring disclosure," *Friends of Animals*, 828 F.3d at 992. The underlying harm Congress had in mind was the unwarranted disclosure of personal information

by government agencies, not the inability of the general public to scrutinize the government's privacy practices. Framed another way, the informational interest claimed by the Plaintiffs in this case is not the "underlying interest," *Strubel*, 842 F.3d at 190, that Congress sought to protect when it enacted Section 208. The alleged denial of public access of privacy impact assessments does not, on its own, "present[] a material risk of harm to the interest Congress sought to protect." *Paris Baguette*, 861 F.3d at 81. The court concludes that the Plaintiffs' theory of informational injury fails. Section 208 does not establish a right of public access to privacy impact assessments enforceable via suit by members of the public whose personal information is not in jeopardy of being mishandled.

Having failed to show a cognizable informational injury, the Plaintiffs are unable to demonstrate any injury-in-fact and thus unable to demonstrate that they have standing to bring suit under Section 208. Accordingly, Count 18 is dismissed for lack of subject matter jurisdiction. *See Katz*, 872 F.3d at 121 (dismissal for lack of standing is a dismissal for lack of subject matter jurisdiction).

This conclusion is consistent with the fundamental principle of standing that "when the asserted harm is a 'generalized grievance' shared in substantially equal measure by all or a large class of citizens, that harm alone normally does not warrant [the] exercise of jurisdiction." *Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 358 (2d Cir. 2016) (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975)). The informational injury alleged by the Plaintiffs here is precisely such a generalized grievance. The Plaintiffs do not allege that they themselves are Portal users, and are thus situated no differently than every person in America who is not a Portal user. The court sees nothing in the circumstances of this case that would justify overriding the bedrock principle that such broadly generalized grievances do not typically confer standing.

### IV. Other Issues

Because the court has determined that it lacks subject matter jurisdiction, it does not reach the parties' arguments regarding the merits of summary judgment on Count 18, and renders no ruling as to whether the collection of Portal user information required a privacy impact assessment or whether any existing privacy impact assessment was sufficient to satisfy the requirements of Section 208 with respect to the collection of Portal user information.

### CONCLUSION

The Plaintiffs' Motion to Strike (Doc. 49) is **DENIED**.

The Defendant's Motion to Dismiss for Failure to State a Claim and Motion for Summary Judgment (Doc. 15) is **GRANTED** with respect to Count 18 of the Complaint. Summary judgment is granted in favor of the Defendant on Counts 18 and that count is **DISMISSED**.

The court having denied all relief requested by the Plaintiffs, final judgment shall issue in favor of the Defendant.

Dated at Rutland, in the District of Vermont, this 26 day of July, 2018.

Geoffrey W. Crawford, Chief Judge
United States District Court